## BRUCE MORRIS ET AL. *v.* ROBERT CONGDON ET AL.
### (AC 24109)

Foti, DiPentima and Hennessy, Js.

Argued March 29—officially released October 19, 2004

*Richard S. Cody*, with whom, on the brief, was *Jon B. Chase*, for the appellants (plaintiffs).

*Frank A. Manfredi*, with whom was *Marc Mandell*, for the appellees (defendants).

*Opinion*

DiPENTIMA, J. In this mandamus action, the plaintiffs, Bruce Morris and George Kleeman, appeal from the summary judgment rendered in favor of the defendants, the board of selectmen (board) of the town of Preston and its three members,[1] denying the plaintiffs' request for an order to compel the defendants to call a town meeting. The plaintiffs claim that the trial court improperly determined that their application to the board presented an improper purpose for a town meeting. We affirm the judgment of the trial court.

The following procedural history and factual background are relevant to our disposition of the plaintiffs' appeal. The plaintiffs, who are residents of the town of Preston, submitted an application to the town clerk signed by more than fifty qualified voters. In the application, the plaintiffs called for the board to warn a special town meeting "to consider and act upon a motion to eliminate the position of a paid full-time or part-time town planner." The board refused to warn a meeting. The plaintiffs filed an action in the Superior Court seeking a writ of mandamus to compel the board to warn a town meeting pursuant to General Statutes § 7-1 (a).[2] The defendants filed an answer and special defenses, asserting that the subject matter of the proposed meeting was illegal or outside the legislative authority of a

---

[1] The members of the board named as defendants are Robert Congdon, Gerald W. Grabarek and Thomas F. Maurer.

[2] General Statutes § 7-1 (a) provides in relevant part that the selectmen "shall warn a special town meeting on application of twenty inhabitants qualified to vote in town meetings . . . ."

town meeting and was an administrative function within the discretion and authority of the selectmen.

On July 3, 2002, the plaintiffs filed a motion for summary judgment, with a memorandum of law and affidavits, on the grounds that no genuine issue of material fact was in dispute and that they had a clear right to the relief they sought in their application. The defendants filed a memorandum of law and affidavits in opposition to the motion. On January 29, 2003, in a written decision, the court denied the plaintiffs' motion, finding, inter alia, that "as a matter of law . . . the plaintiffs' [application] was not for a proper purpose and that the defendants were legally justified in refusing to warn the meeting." The defendants then filed a motion for summary judgment on the basis of the court's written decision on the plaintiffs' motion.[3] That motion was granted on March 17, 2003, without another memorandum of decision.[4] This appeal followed.

The plaintiffs claim that the court improperly concluded that their application presented an improper purpose for the town meeting. In particular, the plain-

[3] In their memorandum of law in support of their motion, the defendants asked the court to consider the memorandum of law that they had filed in opposition to the plaintiffs' motion, requested that the court take judicial notice of the court's memorandum of decision and grant their motion for the reasons stated in the decision. The defendants referred to the documents the parties had submitted in connection with the plaintiffs' motion for summary judgment and stated that "[b]oth parties therefore request that the Court utilize the previously provided affidavits and documents to base its decision in connection with this Motion for Summary Judgment."

[4] The court did not issue a memorandum of decision granting the defendants' motion, and the plaintiffs did not file a motion for articulation or attempt, pursuant to Practice Book § 64-1 (b), to obtain a statement of the court's reasons for ruling as it did. In this appeal, the essential facts are not in dispute, the memorandum of decision the defendants relied on in their motion for summary judgment is in the record, and the issue of whether the plaintiffs are, as a matter of law, entitled to the relief they sought in their application for a writ of mandamus is a question of law. We therefore will review the claim. See *J.K. Scanlan Co.* v. *Construction Group, Inc.*, 80 Conn. App. 345, 351, 835 A.2d 79 (2003).

tiffs argue that (1) the court should not have relied on *State ex rel. McDermott* v. *Wilkinson*, 88 Conn. 300, 90 A. 929 (1914), in concluding that the purpose was improper as a matter of law, (2) the people have been denied their fundamental right to act as a legislative body, (3) the defendants have a duty to call a town meeting and (4) the court improperly interfered with a purely legislative process. We agree with the plaintiffs that the court improperly relied on *State ex rel. McDermott.* Nevertheless, we affirm the court's decision.[5]

At the outset, we note the standard of review of the court's granting of a motion for summary judgment. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citation omitted; internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995); see also Practice Book § 17-49. Our

---

[5] We may affirm the right result of the court even though it may have been founded on an improper reason. *Kalas* v. *Cook,* 70 Conn. App. 477, 485, 800 A.2d 553 (2002).

review of the trial court's decision to grant a motion for summary judgment is plenary. See *Barry* v. *Quality Steel Products, Inc.,* 263 Conn. 424, 450, 820 A.2d 258 (2003).

"[M]andamus is an extraordinary remedy. It is designed to enforce a plain positive duty. The writ will issue only when the person against whom it is directed is under a clear legal obligation to perform the act compelled and the party seeking the writ has a clear legal right to the performance. . . . It, therefore, cannot be invoked to enforce a discretionary act. . . . Mandamus neither gives nor defines rights which one does not already have. . . . It acts upon the request of one who has a complete and immediate legal right; it cannot and does not act upon a doubtful and contested right. . . . The plaintiff in an action for a writ of mandamus bears the burden of proving the deprivation of a clear legal right that warrants the imposition of such an extraordinary remedy." (Citations omitted; internal quotation marks omitted.) *Honan* v. *Greene,* 37 Conn. App. 137, 143, 655 A.2d 274 (1995).

Under § 7-1, the board is required to warn a town meeting on the application of twenty inhabitants qualified to vote. Under the uncontroverted case law interpreting the statute, there is no duty to warn a meeting pursuant to such an application unless the board is reasonably certain that the purpose of the application is legitimate and proper. *Lyon* v. *Rice,* 41 Conn. 245, 248–49 (1874); *Willis* v. *Sauer,* 19 Conn. Sup. 215, 217, 111 A.2d 36 (1954); *State ex rel. Weisberg* v. *Board of Selectmen,* 16 Conn. Sup. 485, 486 (1950). Because the application must be for a proper purpose, the central issue on appeal is whether the purpose of the application, to consider and act on a motion to eliminate the position of a paid full-time or part-time town planner, is proper.

The plaintiffs claim that the purpose of the application was proper pursuant to General Statutes § 7-148 (c), which provides in relevant part that "[a]ny *municipality* shall have the power to . . . (5) (C) [p]rovide for the employment of and prescribe the salaries, compensation and hours of employment of all officers and employees . . . ." (Emphasis added.) The plaintiffs appear to be arguing that "municipality" and "town meeting" are synonymous. Section 7-148 (a) defines municipality as "any town, city or borough, consolidated town and city or consolidated town and borough." The statute does not define municipality in terms of the town meeting. The plaintiffs' argument is therefore unavailing.

The plaintiffs next argue that establishing and abolishing municipal positions is not the sole domain of the selectmen. They assert that the elimination of the town planner position is available by legislative action of the body politic, the town meeting. The defendants respond to the plaintiffs' claim by arguing that it is solely the administrative responsibility of the board to hire essential town employees. We agree with the defendants.

Of the 169 towns in Connecticut, 109 operate under a town charter. Office of Legislative Research, Research Report, December 10, 1997, 97-R-1307. Preston is one of the sixty towns that operates without a charter. Accordingly, we look to the General Statutes for its terms of town government. There is scant Connecticut law with respect to those towns operating without a town charter. In its memorandum of decision denying the plaintiffs' motion for summary judgment, the court relied on *State ex rel. McDermott* v. *Wilkinson*, supra, 88 Conn. 300, in stating that "[w]hen a board of selectmen acts in its administrative capacity, the town meeting has no authority over the board's decisions." Although we disagree with the court's reliance on *State ex rel. McDermott*, we sustain the decision on a theory

different from that articulated by the court. See *Groton v. Commission on Human Rights & Opportunities*, 169 Conn. 89, 101, 362 A.2d 1359 (1975).

The facts of *State ex rel. McDermott* make it inapposite to the case at hand. Chapter 334 of the special laws of 1911, and especially § 12 of that legislation, was a special act that specifically vested in the Orange board of selectmen, inter alia, the power to organize and to maintain a fire department. *State ex rel. McDermott v. Wilkinson*, supra, 88 Conn. 303. The relator, James McDermott, was a fireman employed by the selectmen of the town of Orange. Id., 305. The selectmen hired another person, assigned that person McDermott's duties and then terminated McDermott's employment. Id. A special town meeting was held where a resolution was passed repealing the action of the selectmen and directing them to reinstate McDermott. Id., 302–303. The selectmen refused to reinstate him, and McDermott sought a writ of mandamus to compel the board to reinstate him. The trial court denied the mandamus application, and the Supreme Court affirmed the denial, holding that under the provisions of the special laws of 1911 the town meeting "was without power to dictate [the selectmen's] action, save as legislation may have conferred that power." Id., 308.

Unlike the town of Orange in *State ex rel. McDermott*, the town of Preston is not subject to a special act, nor does it have a town charter. The selectmen are governed, therefore, by the general grant of authority contained in General Statutes § 7-12 which provides in relevant part that the selectmen shall "superintend the concerns of the town . . . ." "When a general power is given to a municipal officer, whatever is necessary for effective exercise of that power is, in the absence of express authority, conferred by implication. . . . It is clear that this court has long been willing to imply to town officials those powers reasonably necessary to

implement authority expressly delegated. It is also true, however, that such implied authority may be limited under the facts of a particular case . . . or by express restrictions on such power." (Citations omitted.) *Hartford* v. *American Arbitration Assn.*, 174 Conn. 472, 479, 391 A.2d 137 (1978).

In this case, we conclude that the hiring and subsequent discharge of a town planner are powers reasonably necessary for the board to carry out its charge to "superintend the concerns of the town . . . ." General Statutes § 7-12. Moreover, "[i]t is the common rule that where the power of appointment is conferred in general terms without restriction, the power of removal at [the] discretion and at the will of the appointing power is implied, and always exists unless restricted and limited by some other provision of law." *State ex rel. Reiley* v. *Chatfield*, 71 Conn. 104, 112, 40 A. 922 (1898). In this case, we conclude that the town planner was appointed under the general powers of the board and, because of that, the power of removal rests solely with the board. The town meeting, therefore, did not have the power to remove the town planner and, consequently, the purpose of the requested meeting was improper.

In addition, "[t]he statutory powers and duties of selectmen are confined to those involved in the general authority given them to order the prudential affairs, or to superintend the concerns of the town, as *defined by custom*, and such others as may from time to time be specified by law." (Emphasis added.) *Buck* v. *Barnes*, 75 Conn. 460, 462, 53 A. 1012 (1903). There was evidence in the record here as to the customary powers and duties of the selectmen. In his affidavit, the defendant Robert Congdon, the first selectman, stated that the board traditionally hired and discharged municipal employees, other than the board of education. The board has also determined what employees are needed, rates of pay, hours of work and job responsibilities.

Finally, the board also works with the board of finance to determine the budgetary amount required to sustain the employment of essential town employees. The plaintiffs did not challenge those factual averments in their opposing affidavits. In its memorandum of decision, the court stated that "[t]he defendants observe that the board has *traditionally* considered the creation of positions that were needed to maintain the town as one of their superintending concerns, an administrative duty." (Emphasis added.)

On the basis of the record in this case, we conclude that the hiring, and consequently the discharge, of the town planner was within the scope of the board's authority. As a consequence, the town meeting was without power to consider the discharge of the town planner. The purpose of the town meeting, therefore, was improper, and the defendants properly refused to warn the town meeting.

The judgment is affirmed.

In this opinion the other judges concurred.